UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

ERIC D. BURTON,                         )
                                        )
        Plaintiff,                      )        Civil Action No. 5: 12-208-DCR
                                        )
V.                                      )
                                        )
MICHAEL J. ASTRUE,                      )        **MEMORANDUM OPINION**
Commissioner of Social Security,        )        **AND ORDER**
                                        )
        Defendant.                      )

                    ***   ***   ***   ***

        This matter is pending for consideration of cross-motions for summary judgment filed

by Plaintiff Eric D. Burton ("Burton" or "the Claimant") and Defendant Michael J. Astrue,

Commissioner of Social Security ("the Commissioner").  [Record Nos. 11, 12]  Burton argues

that an Administrative Law Judge ("ALJ") erred in finding that he is not entitled to a period of

disability and disability insurance benefits.  The Commissioner contends that the record contains

substantial evidence in support of the ALJ's decision denying benefits to Burton, and that the

decision should be affirmed.   Because substantial evidence supports the Commissioner's

decision, the Court will grant the Commissioner's motion and deny the relief requested by

Burton.

## I.

        Burton filed an application for a period of disability, disability insurance benefits

("DIB"), and Supplemental Security Income ("SSI") on September 22, 2009, alleging disability

-1-

beginning November 15, 2008. [Tr., pp. 170-77] His application was denied initially and upon reconsideration. [Tr., p. 27] Burton appeared and testified at an administrative hearing held on October 6, 2010, in Huntington, West Virginia, before ALJ Caroline H. Beers. [*Id.*] Also present at the hearing was Pamela Hofer, a non-attorney representative for Burton, and vocational expert Anthony T. Michael, Jr. [*Id.*]

ALJ Beers issued an unfavorable decision on December 6, 2010. Burton was 21 years old at the time of the ALJ's decision. He had completed the tenth grade and has previously worked as a janitor. [Tr., pp. 186, 273] After reviewing the record and the testimony submitted during the administrative hearing, ALJ Beers determined that Burton suffered from the severe impairment of mathematics disorder. [Tr., p. 29] Notwithstanding this impairment, the ALJ found that Burton has the residual functional capacity ("RFC") to perform work at all exertional levels. [Tr., p. 37] However, she made the following findings regarding his nonexertional limitations:

> [Burton should] avoid[] concentrated exposures to extreme heat, cold, fumes, dusts, gases, odors, and poor ventilation; no exposure to hazards such as heights and moving machinery; he can perform simple tasks consistent with SVP 2 entry level work as defined by the Dictionary of Occupational Title (DOT); he can maintain concentration for two hour blocks through an[] eight-hour workday; he can maintain occasional interaction with the general public, coworkers, and supervisors; he can make simple work-related decisions with few workplace changes; he should perform no work that requires written reports, reading instructions, or math calculations.

[Tr., p. 33]

Based on the testimony of the vocational expert, the ALJ found that Burton could not perform past relevant work. However, she found that he could perform other jobs in the national

economy, such as hand packager, dining room attendant, assembler, bagger, and machine tender. [Tr., pp. 36-37]  After determining that Burton could perform other work existing in significant numbers in the national economy, the ALJ concluded that he was not disabled.  Burton was denied a period of disability, DIB, and SSI.

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical

evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

-4-

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Burton argues that the Commissioner's decision should be overturned because: (1) the ALJ erred in concluding that mathematics disorder was Burton's only severe impairment; (2) the ALJ erred in determining that Burton did not have an impairment that met or equaled a listed impairment of mental retardation or organic mental disorder; and (3) the ALJ determination of Burton's RFC is not supported by substantial evidence. The Commissioner disagrees with each argument advanced by the Claimant.

### A.    ALJ Beers Did Not Err In Determining Burton's Severe Impairment.

As noted above, Burton first alleges error with the ALJ's finding that his only severe impairment is mathematics disorder. He argues that the ALJ erred in concluding that his I.Q. of 62, attention deficit hyperactive disorder ("ADHD"), mood disorder, reading disorder, and phonological disorders are not also severe impairments. Burton contends that because the ALJ gave "great weight" to the opinions of Lynn Hymer, MA, the ALJ should have found that all of

Hymer's diagnoses, which included a mood disorder, reading disorder, phonological disorder, and a GAF of 65, constituted severe impairments. [Record No. 11-1, p. 7]

On November 5, 2009, consultative psychological examiners Christopher Catt, Psy. D. and Kudleep Gray, Psy. D., examined Burton. [Tr., pp. 29, 361-6] The sole diagnosis from this consultative examination was that of a mathematics disorder. [Tr., p. 364] Although Burton's full scale I.Q. was found to be 62, Drs. Catt and Gray estimated Burton's intelligence level as "borderline." [*Id.*] The ALJ gave these opinions and mental status examinations "great weight" because "[the doctors] examined the claimant, administered a clinical interview, performed a mental status examination, administered a battery of psychological tests, [Dr. Catt] is a specialist in the field of psycholog[y]," and because the opinions were consistent with the record as a whole. [Tr., p. 35] The ALJ also gave "great weight" to therapist Hymer's opinions. ALJ Beers, however, did not find that therapist Hymer's diagnoses constituted severe impairments because there was not evidence of significant limitation of work-related functioning regarding Burton's alleged mood disorder, reading disorder, phonological disorder and ADHD. [*Id.*] Burton maintains that this was in error.

Despite Burton's assertions, the ALJ did not err in finding that mathematics disorder was Burton's only severe impairment. First, Hymer is a therapist, and thus is not an "acceptable medical source" whose opinion is entitled to controlling weight, or whose opinion would establish the existence of an impairment. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); *see also Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997). And even though Hymer's opinions are not entitled to controlling weight, the ALJ did consider Hymer's opinions

and weighed them with the other evidence in the record.  For example, the ALJ considered Burton's allegations of bipolar disorder, but found that "upon review of the evidence, there is no medical documentation of a diagnosis of bipolar disorder."  [Tr., p. 30]  Additionally, the ALJ considered that Burton "has not received treatment, medication or counseling for bipolar disorder."  [*Id.*]  The ALJ further considered that there is no evidence of "significant limitation of work-related functioning secondary to bipolar disorder."  Thus, there is a basis in the record to support the ALJ conclusion that Burton's alleged bipolar disorder did not constitute a severe impairment.  Similarly, the ALJ reviewed the record and found no medical documentation to support Burton's allegations of asthma, despite the fact that Burton has consistently received regular medical treatment for other conditions, like rashes.  [*Id.*; *see also* Tr., pp. 344, 466-75]

Although Burton also alleged a speech impairment, or a phonological disorder, the ALJ "observed him as very articulate and he was very easy to understand."  [Tr., p. 30]  During the hearing before the ALJ, the following exchange occurred regarding Burton's alleged speech impairment:

> Q:  Do you feel that you have a speech problem?
> A:  Yeah – when I go places, talk to people, they say they couldn't understand me.  And I actually say stuff I can't understand myself.  But I never could understand half the stuff I say, sometimes.
> Q:  Are you saying that you can't articulate the words or you can't phrase things properly?
> A:  I can't – like you said, phrase things.  Say the – yeah, say things.  Some words are complicated.  And they tried to help me say some – spell it out, and I can't actually – how do you say this – sound, sound it out or something.

[Tr., p. 58]  In addition, Dr. Gatt and Dr. Kudleep observed during their consultative examination that Burton's "speech flow was normal" and his "[t]hought content was appropriate to mood and

circumstances." [Tr., p. 363]  The ALJ did not find Burton's allegations regarding his speech impairment credible, because "not only does he not receive treatment but he is very readily understood, both with pronunciation and with speech and thought content." [Tr., p. 30]

Burton finally argues that the ALJ failed to properly conclude that his ADHD is a severe impairment.  He alleges that he has had the condition since kindergarten, and that it should be considered a severe impairment.  Indeed, the ALJ considered that Burton suffered from ADHD when he was a child, based on the diagnosis of Nancy Braun, M.D, in May of 1995. [Tr., p. 30] However, on August 2, 1995, Dr. Braun wrote in a letter that Burton's behavior was improving, and she transferred the management of his care back his treating pediatrician, Dr. Fulkerson. [Tr., pp. 30, 409-10]  The last treatment note from Dr. Fulkerson is dated December 29, 2004. [Tr., p. 475]  Thus, the ALJ found that "the evidence does not establish significant limitation of work-related functioning secondary to ADHD, since his alleged onset date [of November 15, 2008]" [Tr., p. 30]  Because there was no medical evidence regarding the time period in question, beginning with the alleged onset date of disability, the ALJ did not consider Burton's alleged ADHD to be a severe impairment.

The ALJ did not err in finding that Burton's alleged impairments are not severe impairments that would significantly limit work-related functioning.  And substantial evidence supports the ALJ's conclusion that Burton's sole severe impairment is mathematics disorder. Therefore, the Court finds no error with the ALJ's conclusion regarding Burton's severe impairment.

   **B.    The ALJ Properly Concluded That Burton Did Not Have An Impairment That Met Or Equaled A Listed Impairment.**

Next, Burton alleges error in the ALJ's conclusion that Burton did not meet a listed impairment.  Burton argues that he meets the listed impairments of both 12.05C, the listing for mental retardation, and 12.02, the listing for organic mental disorders.  The listing for 12.05C provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder when the requirements in [C] are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Meeting the impairment in Paragraph C requires a finding of "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*

 "To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. §§ 404.1525(d), 416.925(d). When a claimant alleges that his impairment meets or equals a listed impairment, he must present specific medical findings that satisfy the criteria of the particular listing.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  Although the ALJ found that Burton's low I.Q. score satisfied the first part of 12.05C, she did not find that Burton suffered from a physical or other mental impairment imposing an additional and significant work-related limitation.

Substantial evidence supports the ALJ's conclusion that Burton does not meet the listing for mental retardation or organic mental disorder.  Although Burton's full scale I.Q. score is 62,

-9-

Dr. Catt and Dr. Gray did not diagnose mental retardation, instead estimating his intelligence in the borderline range. [Tr., pp. 363-64] In addition, there is evidence that, when he was 10 years old, Burton had a verbal I.Q. of 83, a performance I.Q. of 93, and a full scale I.Q. of 86. [Tr., p. 439] Further, despite being placed in special education classes, his school records demonstrate that there was never a diagnosis of mental retardation or other cognitive impairment.[1] When evaluating the criteria under 12.05, the ALJ considered Burton's daily and social functioning, which includes cleaning his room, grocery shopping, watching television, going for walks, visiting with his mother, and attending church. [Tr., p. 31] Although Burton argues that his "poor work performance" documents the missing C criteria, the ALJ did not find "a physical or other mental impairment imposing an additional and significant work-related limitation of function" as required to receive benefits under 12.05. Specifically, the ALJ considered many of Burton's allegations of impairments were not supported by objective medical evidence. [Tr., p. 32] Because the Court upholds the ALJ's findings regarding Burton's impairment, the Court finds that the ALJ's decision regarding 12.05C is supported by substantial evidence.

Burton's argument regarding section 12.02, or the listing regarding organic mental disorders, similarly lacks merit. Burton's sole contention seems to be that his past instances of "decompensation" entitle him to a finding of an organic mental disorder under section 12.02. The listing for organic mental disorders requires the presence of a specific organic factor judged

---

[1] Evidence in the record suggests that Eric was re-evaluated in the eighth grade for Special Education because of "threatening others, disruptive behavior in the halls, and emotional instabilities." [Tr., p. 247]

-10-

to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.  20 C.F.R. pt. 404, Subpt. P, app. 1, 12.02.  Paragraph C, upon which Burton bases his argument, requires a showing of a medically-documented history of chronic organic mental disorder, and repeated episodes of decompensation of extended duration.  *Id.*  However, there is no evidence that Burton was ever diagnosed with an organic mental disorder.  Because there is no medical documentation of a mental disorder, as required, any examples of decompensation at previous jobs are irrelevant.  Thus, substantial evidence supports the ALJ's finding that Burton does not have a condition which meets or equals an impairment listed in 12.02.

### C.    The RFC Is Supported By Substantial Evidence.

Finally, Burton alleges error with the ALJ's determination of his RFC.  He first argues that the ALJ erred in determining that Eric retained the RFC to "maintain concentration for two hour blocks and occasional interaction with the general public, coworkers and supervisors, and make simple work related decisions with few workplace changes."  [Record No. 11-1, p. 9]  He next argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to include limitations on his ability to maintain an appropriate pace or to meet production quotas.  [*Id.*, p. 11]

The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 404.1546(d).  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility.   The Sixth Circuit has recognized that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity."  *Coldiron v. Comm'r of Soc. Sec.*, 391

F. App'x 435, 439 (6th Cir. 2010) (internal quotation marks and citation omitted).  An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

Here, the ALJ considered the opinions of State agency psychological consultants, including Dr. Ed Ross and Dr. Vandivier, Ph.D., and afforded them "great weight."  The ALJ also gave "great weight" to therapist Hymer's opinions, and afforded Dr. Catt's opinions "great weight" when determining Burton's RFC.  Although Burton claims that the ALJ erred by giving greater weight to the state agency physicians' opinions than to Dr. Catt's opinions, the ALJ specifically stated that she gave them both "great weight."  [Tr., p. 35]  The Commissioner contends, and the Court agrees, that "there are no inconsistencies between Drs. Catt's and Gray's opinion and Dr. Vandivier's opinion with regard to [Burton's] ability to concentrate."  [Record No. 12, p. 10]  To the extent that the ALJ rejected portions of Drs. Catt and Gray's opinions, the ALJ was not required to state any "good reasons" for rejecting any opinions of the consultative examiners because they are not treating physicians.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The Court finds that the ALJ adequately considered the medical evidence when determining Burton's RFC, and did not err in weighing the medical evidence of record.

Additionally, the ALJ considered Burton's testimony when determining his RFC.  The ALJ did not find Burton's statements regarding his limitations to be credible to the extent that they are inconsistent with his RFC.  [Tr., pp. 33-34]  Burton testified that he is able to clean his room, grocery shop, take walks outside, watch television, and stated that he is able to pay attention for 10 to 15 minutes at a time.  [Tr., p. 34]  However, the ALJ considered that Burton

-12-

was employed previously as a mechanic and does farm work, and found that his allegations regarding his inability to concentrate more than 10 to 15 minutes while doing activities of daily living inconsistent with his reported activities and his previous employment. [*Id.*]

Finally, Burton argues that the ALJ erred because "the ALJ's hypothetical to the vocational expert did not contain any limitation regarding [Burton's] ability to maintain appropriate pace or meet production quotas." [Record No. 11-1, p. 11 (internal emphasis omitted)] The Sixth Circuit has held that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster*, 348 F.3d at 356). Additionally, the vocational expert's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Id.* ALJ Beers' questions properly relied on her well-supported assessment of Burton's functional limitations. The sole evidence in the record regarding Burton's pace and production quotas comes from Burton's own testimony, where he stated that he could not meet production demands of his past work, that his mind would wander while he was working as a janitor, and when he testified that his supervisor thought he worked slowly. [Tr., pp. 53-54] Because these statements are uncorroborated in the record, the ALJ did not err in not including these uncorroborated alleged limitations in his questions to the vocational expert.

In conclusion, the ALJ applied the correct legal standard when determining Burton's RFC. Further, because substantial evidence supports the ALJ's finding regarding Burton's RFC, the Court finds no error with the ALJ's determination. Likewise, the ALJ did not err in posing

-13-

hypothetical questions to the vocational expert. Therefore, the Court finds that Burton's third and fourth arguments lack merit.

## IV.

ALJ Beers did not err in determining that Burton's only severe impairment is mathematics disorder. Further, substantial evidence supports the ALJ's conclusion that Burton does not have an impairment that meets or equals a listing of mental retardation or an organic mental disorder. Finally, substantial evidence supports the ALJ's finding regarding Burton's residual functional capacity. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Plaintiff Eric D. Burton's Motion for Summary Judgment [Record No. 11] is **DENIED**.

(2)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

(3)     The administrative decision of the Commissioner of Social Security will be **AFFIRMED** by separate judgment entered this date.

This 7th day of January, 2013.



Signed By:

*Danny C. Reeves*

United States District Judge